UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
JPMORGAN CHASE BANK, :
:
Plaintiff, :
: 03 Civ. 8535 (GEL)
:
-v- : **OPINION AND ORDER**
:
GARY WINNICK, et al., :
:
Defendants. :
:
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

This Opinion addresses another installment in the ongoing discovery process in this action. Plaintiff JP Morgan Chase Bank ("JPM") seeks an order compelling discovery from a non-party, Citibank, N.A. For the reasons that follow, the motion will be denied.

JPM brings this fraud action on behalf of various holders of Global Crossing debt ("Real Parties in Interest").[1] Because many of the Real Parties in Interest purchased that debt, and the attendant right to pursue this litigation, from the actual victims of the alleged fraud (the "Original Lenders"), there has been some question as to scope of JPM's discovery obligations. Specifically, defendants claim that the Original Lenders' alleged reliance on representations made by Global Crossing and the reasonableness of such reliance are at issue, and they have sought discovery on these subjects, serving document requests, interrogatories, and deposition notices on JPM, seeking documents, information, and witnesses in the Original Lenders' possession, custody, or control. JPM objected to these requests, arguing, inter alia, that it has

---

[1] The Court's prior opinions, see, e.g., JPMorgan Chase Bank v. Winnick, 228 F.R.D. 505 (S.D.N.Y. 2005), set out the facts of the case in greater detail.

neither the authority nor the obligation to secure discovery from Original Lenders who sold their Global Crossing debt and the attendant right to pursue this action, and thus are not parties to this litigation. The Court rejected this argument in an Opinion and Order dated May 9, 2005, reasoning that it would be unfair to allow JPM and the Real Parties in Interest to stand in the shoes of the Original Lenders in order to pursue this action without requiring them to produce discovery that the Original Lenders would be required to produce if they had brought this action themselves:

> It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear. . . . It would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants.

JPMorgan Chase Bank v. Winnick, 228 F.R.D. 505, 506-07 (S.D.N.Y. 2005). The Court concluded that JPM must provide discovery from the Original Lenders to defendants or risk sanctions. Id. at 507.

JPM has since attempted to secure discovery requested by defendants from the Original Lenders, but has run into difficulties, and now requests this Court's assistance in compelling certain discovery from one Original Lender, Citibank, N.A. "Citibank has voluntarily produced more than 12,500 documents requested by [JPM] pursuant to demands made on it by defendants," and "has responded, and continues to respond, to Interrogatories seeking broad categories of information," (Citibank Mem. at 1-2), but it objects to one outstanding demand

2

made by JPM in a subpoena duces tecum dated July 15, 2005, on the grounds that compliance "would impose tremendous burden and hardship." (Id. at 2.) The demand seeks:

> All documents related to decisions whether or not to fund a borrowing request or similarly extend credit under a pre-existing loan or credit agreement for an aggregate amount of $1 billion or more, in the calendar year 2001, to any of the following companies, or the subsidiaries, parents or affiliates of such companies: 360Networks Corp.; AT&T Corp.; BellSouth; Cable and Wireless plc; Centennial Communications Corp.; China Network Communications ("China Netcom"); Comsat International, Inc.; DACOM Corp.; Deutsche Telekom AG; Emergia Holding NV; EPIK Communications; Equant; FLAG Telecom Group Ltd.; Global Telesystems, Inc. (a/k/a "GTS" or "Ebone"); Hanaro Telecom, Inc.; KG Telecommunications Co., Ltd.; KPNQwest; New World Telecommunications, Ltd.; Nortel Networks Corp.; Pegasus Telecommunications; Qwest Communications International, Inc.; Taiwan Fixed Networks; Techtel; Telecom Italia Media SpA; Telecom New Zealand Ltd.; Teleglobe International Holdings Ltd.; Velocita Corp.; Verizon Communications; Versatel Telecom International N.V.; and WorldCom.

(Horowitz Aff. ¶ 4.) JPM now moves to compel Citibank to produce the demanded documents. That motion will be denied.

As an initial matter, it must be emphasized that Citibank is *not* a party to this litigation. Citibank long ago sold its Global Crossing debt and any potential interest in pursuing this action. Accordingly, Citibank enjoys the protections provided to non-parties by the Federal Rules of Civil Procedure, namely that the Court will "quash or modify" any subpoena that subjects such a non-party "to undue burden." Rule 45(c)(3)(A)(iv). "Whether a subpoena imposes . . . an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Concord Boat Corp. v. Brunswick

Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996), quoting United States v. IBM Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

While Citibank has voluntarily supplied over 12,500 pages of documents in response to JPM's demands, and has offered to comply with the demand at issue here with respect to a subset of the documents requested, Citibank asserts, without contradiction, that full compliance would pose a severe burden, requiring Citibank "to designate several of its personnel to work full time for a period of at least weeks, and probably months, to search records from all over the world." (Citibank Mem. at 2-3; see also id. at 5-7.) Citibank also points out, again without contradiction, that when it sold its Global Crossing debt, the purchasers expressly warranted that they and their successors would "not rely on [Citibank] to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the [Global Crossing] or any Obligor, or any other matter concerning [Global Crossing] or any Obligor," (Beller Aff., Exs. A, B, C, § 5.1(g); see also Citibank Mem. at 3).

Given that Citibank secured an express warranty from the purchasers of its debt that they and their successors would not return one day seeking the production of documents (which is precisely what has happened), and that Citibank has shown that full compliance would subject it to tremendous expense, the Court finds that the burden of complying with the demand at issue is "undue." This is especially so considering the potential relevance of the discovery sought, which is indirect. As the Court observed in an Order dated January 3, 2005, rather than seeking information directly about the Global Crossing transactions at issue in this litigation, the purpose of this discovery is to obtain information about lenders' practices as to comparable transactions, which may yield evidence that the lenders acted unreasonably in conducting the Global Crossing

4

transactions.  Assuming that such information about Citibank's standard operating procedures is vital, Citibank has volunteered to produce a subset of the requested documents, which would permit defendants to audit Citibank's practices.[2]  In short, the Court finds that the burden of the instant discovery demand on Citibank far outweighs the relevance of the discovery sought, and JPM's motion to compel is denied.  Of course, nothing in this ruling precludes JPM from striking an agreement with Citibank to produce the sought-after discovery in exchange for consideration.

As JPM points out, this Court has already ruled that defendants are entitled to production of precisely the documents they now seek from Citibank.  The Court recognizes that requiring JPM to obtain discovery from the Original Lenders, and then refusing to compel the Original Lenders to produce that discovery, appears to place JPM in a double bind.  But this is merely a consequence of choices that JPM and the Real Parties in Interest have made.  As previously discussed, JPM and the Real Parties in Interest stand in the Original Lenders' shoes for the purposes of this litigation, and defendants are thus entitled to any discovery that they would have been entitled to if the Original Lenders had themselves sued.  At the same time, Original Lenders such as Citibank are non-parties to this litigation and are entitled to protection as such.  *They* did not bring this action; they simply sold their Global Crossing debt.  And at least with respect to Citibank, any argument that its decision to profit from selling that debt implicitly binds it to produce the discovery sought here founders on the express warranty that it secured disavowing any such obligation.

---

[2]  Defendants have repeatedly rejected any narrowing of the document request at issue here, which they are perfectly entitled to do. (Def. Mem. at 2.)

The Court emphasizes, however, that the preceeding discussion should not be interpreted as an implicit holding that defendants are entitled to sanctions against JPM. That will depend upon a showing of prejudice. So far, the Court has ruled only that defendants are entitled to this discovery. If, for whatever reason, JPM is unable to produce it, the consequences of that failure can and will be addressed at a later time.

### CONCLUSION

For the foregoing reasons, JPM's motion to compel Citibank to comply with its July 15, 2005 subpoena is denied.

SO ORDERED:

Dated: New York, New York
January 23, 2006

GERARD E. LYNCH
United States District Judge